UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,                      Case No. 18-cr-20492
                                                 Honorable Linda V. Parker

v.

JATAVIUS L. FRANKLIN,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO SUPPRESS (ECF NO. 14)**

Defendant Jatavius L. Franklin ("Franklin") was indicted with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 8.) Presently this matter is before the Court on Franklin's Motion to Suppress, filed August 21, 2018, which challenges the legality of the traffic stop. (ECF No. 14.) The motion has been fully briefed, (ECF Nos. 14, 16, 18), and the Court held a motion hearing on November 28, 2018, (ECF No. 19). For the reasons that follow, the Court is granting Franklin's motion.

**I.    Factual Background**

On the evening of July 7, 2018, Michigan State Police Troopers—Clark and Lopez—were in a marked patrol car and initiated a traffic stop of Franklin's vehicle, a 1989 Chevy pickup truck. (ECF No. 14 at PgID 44.) The troopers

initiated the traffic stop after allegedly noticing Franklin travelling on Welch Boulevard making "excessive noise" due to a defective exhaust system[1]. (ECF No. 16 at PgID 56-57.) Trooper Clark testified that he heard "what appeared to be a motorcycle." (*See* 11/28/18 Hr'g Tr. at 8-9.) Yet, Franklin testified that his vehicle's exhaust was not loud, having had his mechanic inspect the vehicle only a few days before his traffic stop[2]. (*Id.* at 124, 131-32.) After his mechanic's inspection, Franklin test drove the vehicle and believed the exhaust functioned properly. (*Id.*) He stated that he only identified rust underneath the vehicle—including rust on the exhaust—but the undercarriage did not have any holes or "bad rust," *id., i.e.,* conditions that may cause a muffler[3] to malfunction or become defective.

Both troopers testified that while patrolling on Welch Boulevard they had both of their windows rolled down for the specific purpose of being able to listen to their surroundings. (*Id.* at 8, 97.) On cross-examination, however, Franklin's

---

[1] Michigan Compiled Law ("MCL") § 257.707b(1) states that a "motor vehicle, while being operated on a highway or street, shall be equipped with an exhaust system in good working order to prevent excessive or unusual noise." The MCL also states that a person "shall not operate a vehicle on a highway or street if the vehicle has a defect in the exhaust system which affects sound reduction." *Id.* § 257.707c(3). Violation of this statute constitutes either a misdemeanor or civil infraction. *Id.* § 257.707d.
[2] Franklin purchased the preowned truck the day prior to the traffic stop. (*See* 11/28/18 Hr'g Tr. at 131-32.)
[3] The muffler is the part of a motor vehicle's exhaust system, serving to muffle the sound of the vehicle.

counsel used the internal dashcam video to demonstrate to the Court that, after Franklin was placed under arrest and he and the troopers returned to the patrol car, Trooper Clark's driver-side window was rolled up. (*Id.* at 46, 104.) The internal dashcam video begins moments before Franklin and Trooper Clark return to the patrol car[4]. And both troopers confirmed—but only at this specific time in the video—that the internal dashcam video showed Trooper Clark's driver-side window rolled up. (*Id.*) To add, Franklin testified that while he was being walked back to the patrol car he saw the windows on all sides of the car were rolled up. (*Id.* at 126.)

Trooper Clark explained that "for the purposes of [interviewing] Mr. Franklin clearly the windows *were put up*." (*Id.* at 62.) Trooper Lopez also explained that "before [reading] rights . . . *[y]ou've got to roll up your windows* so that there's no outside noise." (*Id.* at 104.) Only Trooper Lopez testified as to when and by whom the windows were rolled up[5]. (*Id.* at 105-06.) But the Court believes that these details are neither clear nor confirmed in the dashcam video.

Following the alleged infraction, the troopers initiated the traffic stop by activating their overhead lights to stop Franklin's vehicle, which had just parked in a residential driveway. (ECF No. 18 at PgID 66.) Once pulled behind the vehicle,

---

[4] Trooper Lopez had already returned to the patrol car.
[5] Trooper Lopez testified that Trooper Clark rolled up the windows sometime shortly after he returned to the patrol car. (*See* 11/28/18 Hr'g Tr. at 105-06.)

3

they noticed that it did not have a registration plate affixed to the back bumper; rather, a temporary plate was hung from the interior of the back window without illumination[6]. (*Id.*) Trooper Clark testified that, after following Franklin's vehicle into the residential driveway, the troopers "noticed that the license plate wasn't affixed to the back of the vehicle." (*See* 11/28/18 Hr'g Tr. at 10.) He also testified that they initiated their overhead lights at that time. (*Id.*) The dashcam video shows that the troopers initiated their overhead lights at the precise moment the vehicle can be seen stopping in the residential driveway. Moreover, Trooper Clark later testified that the infraction observed on the roadway was the impetus to their initiating the traffic stop. (*Id.* at 48.)

Upon approaching the vehicle, the troopers made contact with the single occupant, Franklin, and informed him of the reason for the stop. (ECF No. 14 at PgID 45.) Within a few minutes, Trooper Clark asked for consent to search Franklin's vehicle; and Franklin gave consent. (*Id.*) After exiting to allow the troopers to search, Franklin admitted to having marijuana inside the vehicle;

---

[6] MCL § 257.225 states that "a registration plate issued for a vehicle shall be attached to the rear of the vehicle. . . . in a place and position that is clearly visible." It also states that "a person who violates this section is responsible for a civil infraction." *Id.* Also, MCL § 257.686(2) states that "[e]ither a tail lamp or a separate lamp shall be constructed and placed so as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." The plain language of these statutes does not exclude temporary registration plates from the illumination and visibility requirements governing registration plates generally. *People v. Stanley*, No. 319229, 2015 WL 1314665, at *2 (Mich. Ct. App. Mar. 24, 2015) *appeal denied*, 869 N.W.2d 606 (2015).

consequently, the troopers detained him and placed him in handcuffs. (ECF No. 16 at PgID 57; ECF No. 14 at PgID 45.) During the search of Franklin's vehicle, the troopers found a .25 caliber pistol underneath the driver's seat and a small quantity of marijuana underneath the radio. (ECF No. 14 at PgID 45.) Upon finding the contraband, the troopers *Mirandized* him, placed him under arrest, and he later admitted to knowingly possessing the firearm. (*Id.*)

## II. Applicable Law & Analysis

### A. Probable Cause

#### a. First Alleged Infraction: Loud Exhaust

"The Fourth Amendment forbids law enforcement officers from making unreasonable searches and seizures, 'and its protections extend to brief investigatory stops of . . . vehicles that fall short of traditional arrests.' " *United States v. Lyons*, 687 F.3d 754, 762-63 (6th Cir. 2012) (citing *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir.2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002))). The Fourth Amendment demands that an officer, regardless of his subjective intent when stopping a vehicle, have either probable cause of a civil traffic violation or reasonable suspicion of criminal activity. *Id.* (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n. 6 (6th Cir. 2004)). "Probable cause is defined as 'reasonable grounds for belief [that an infraction occurred], supported by less than prima facie proof but more than mere

5

suspicion.'" *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Thus, a police officer that observes any traffic violation may stop the driver to issue a citation for the infraction. *See United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).

"When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Therefore, police officers may stop vehicles for any civil infraction, no matter how slight, even if the officer's true purpose was a hope that contraband would be found as a result of the stop. *Id.* (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)); *see also United States v. Hill*, 195 F.3d 258, 265 (6th Cir. 1999) (upholding stop supported by probable cause when officer initially followed vehicle because it was of a type used to transport narcotics). Notwithstanding, where no traffic violation has occurred, an investigative or pretextual stop is improper. *United States v. Huguenin*, 154 F.3d 547, 552-59 (6th Cir. 1998). And any evidence seized during an illegal traffic stop must be suppressed as "fruits of the poisonous tree." *Hill*, 195 F.3d at 264 (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)).

Franklin contends that the troopers lacked probable cause that a civil infraction occurred. In his brief and at the motion hearing, Franklin's counsel argued that the dashcam video of the traffic stop does not show the troopers close

enough to Franklin's vehicle to observe the infraction. Because the dashcam video did not include external audio due to an unexplained malfunction, there is no other evidence that attests to whether Franklin's vehicle in fact had a loud exhaust. Notably, the external dash cam video also omits the time in which Franklin's vehicle passed by the troopers' patrol car. It begins a few moments before Trooper Clark made a U-turn in pursuit of Franklin. Yet, once the U-turn is made, Franklin's vehicle is not observed in the dashcam video. The troopers had to travel three blocks before Franklin's vehicle appears barely visible, making a right turn one block ahead.

The Court highlights that the troopers did not activate their overhead lights immediately after observing the alleged infraction but waited until they observed Franklin's vehicle pulling into a residential driveway. Trooper Clark testified that he felt it was not necessary to activate the overhead lights because he "could catch up to the vehicle without exceeding the speed limit." (*See* 11/28/18 Hr'g Tr. at 79.) To the contrary, Trooper Lopez testified that they *were* exceeding the speed limit to catch up to Franklin's vehicle. (*Id.* at 105.)

Given that: (1) there is no external audio to substantiate the vehicle's loud exhaust; (2) the external dashcam video does not observe Franklin's vehicle pass by the troopers' patrol car; (3) the troopers did not initiate the traffic stop immediately after observing Franklin's alleged infraction; and (4) there are

discrepancies, omissions[7], and contradicting testimony surrounding the troopers' observation of the alleged infraction, the Court is not convinced by a preponderance of the evidence that the alleged civil infraction occurred. Therefore, the Court concludes that this alleged infraction did not provide probable cause for the stop of Franklin's vehicle.

The Court reached the above conclusion based on Sixth Circuit precedent. Notwithstanding the findings and conclusions, the Court feels compelled to note that the troopers' intent in stopping Franklin's vehicle is illuminating, albeit not legally germane to the probable cause determination. The Court need not speculate as to the intent of the troopers because it is clear from the record. Trooper Clark admitted to "fishing, stopping vehicles, looking for incriminating evidence." (*See* 11/28/18 Hr'g Tr. at 33-34.) He testified, "[O]ur job is proactive patrolling, which is looking beyond the stop . . . . Our job in the city of Flint is to look for guns, drugs and felons[8]. So looking beyond the stop is investigating more." (*Id.*)

---

[7] The Court takes issue with Trooper Clark's inability to recall whether Franklin's vehicle was on or off after initiating the traffic stop and making contact with Franklin. (*See* 11/28/18 Hr'g Tr. at 49-50.) If Franklin's vehicle were on, it presumably would have caused a raucous and permitted the trooper to confirm the very purpose of the traffic stop—investigating the loud exhaust.

[8] Although in a predominantly African-American community, the majority of the arrests during the troopers' shift on the evening of July 7, 2018 were of African-American men under the age of 35, stemming from consensual searches subsequent to traffic stops justified by minor civil infractions. (*See* 11/28/18 Hr'g Tr. at 34-42.) Likely every driver commits some minor civil infraction each time he or she is on the roadway—stopping too close or too far from a crosswalk,

The troopers' investigatory conduct also makes their intent clear. Investigating the loud exhaust appeared to be of little to no concern. (*Id.* at 111.) Before requesting consent to search Franklin's vehicle, the troopers did not perform any of the routine tasks associated with a traffic stop—*i.e.,* running the plate, checking the ID for warrants or background information, *etc.*, *id.,* at 94; and the search of the vehicle was not related to investigating the alleged civil infraction, *id.,* at 92-93. (*See also* 11/28/18 Hr'g Tr. at 123-24.) Indeed, the law is clearly established that an officer's subjective intent is irrelevant to a finding of probable cause. *Blair*, 524 F.3d at 748 (6th Cir. 2008) (citing *Whren*, 517 U.S. at 813). Still, the troopers' intent to investigate unjustified[9] suspicions of other criminal activity gives the Court concern. Although in the significant interest of public safety and removing illegal weapons from the community of Flint, *see* 11/28/18 Hr'g Tr. at 75-76, the interest in preventing improper pretextual stops is also of great significance to protecting citizens' constitutional rights.

### b. Second Infraction: Improper License Plate

---

making too wide of a turn, changing lanes without signaling, *etc.* Upon observing any of these infractions, an officer is justified in stopping that vehicle. Stopping every car for each infraction would be impractical, if not impossible. Thus, there must be some calculus as to which vehicles to stop. The Court can only speculate as to the equation, but the result here is instructive.

[9] Trooper Clark testified that Franklin was "respectful," "coherent," and "compliant." (*See* 11/28/18 Hr'g Tr. at 18.) He also testified that Franklin did not appear intoxicated, drunk, or under the influence of any type of controlled substance. (*Id.* at 21, 75.)

The Government contends that the troopers' observation of Franklin's vehicle violating Michigan's registration plate statutes is sufficient for an independent finding of probable cause. Indeed, violating Michigan's registration plate statutes is a civil infraction. *See supra* note 6. And the external dashcam video of the traffic stop shows that neither a license plate was affixed to the rear bumper of Franklin's vehicle nor was there any illumination of the temporary plate affixed to the rear window. But the troopers observed this violation, as discussed *supra,* only *after* pulling in behind Franklin's vehicle. And if Franklin was unlawfully seized before the troopers observed the license plate infraction, it could not have justified the seizure. *See United States v. Johnson*, 631 F. App'x. 299, 302 (6th Cir. 2015) (citing *United States v. Figueredo–Diaz*, 718 F.3d 568, 573 n. 2 (6th Cir.2013) ("Reasonable suspicion [or probable cause] for a stop cannot logically be based on events that occur after the suspect is seized.")). Thus, this probable cause determination hinges on whether Franklin was seized at the time the troopers observed the license plate infraction.

As the Sixth Circuit laid out in *Johnson*, a seizure requires two things: (1) "as a result of intentional police conduct, 'a reasonable person must believe that he is not free to leave,' " *id.,* (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.))); and (2) the person " 'must actually yield to the show of authority.' "

*Id.* (quoting *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir.2010)). Yielding "requires either that the police use physical force or that the person demonstrate submission to the police." *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

Here, like in *Johnson*, the police asserted their authority by activating the overhead lights on their patrol car. In the dashcam video, at the moment the troopers activate their overhead lights, Franklin's rear brake lights are visibly illuminated as he stops in the residential driveway. *See Brendlin v. California*, 551 U.S. 249, 255-56 (2007) (holding once a car has stopped, its occupants have been seized for Fourth Amendment purposes). Although having arrived at his destination, Franklin neither exited his vehicle nor exhibited any conduct demonstrating his intent to leave. *See Johnson*, 631 F. App'x. at 302 (citing *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) ("Determining when a person has submitted to police authority is an objective inquiry that takes into account all the facts and circumstances of the stop.") The Court finds that not only would a reasonable person believe that he was not free to leave but also Franklin actually believed that he was not free to leave. (*See* 11/28/18 Hr'g Tr. at 118-19 (Franklin testified, "As I was in the driveway, I cut my car off, and as I was going to exit the vehicle, I seen the lights behind me of the police . . .")). Based on all the facts and circumstances, Franklin immediately yielded and was seized

11

directly after the assertion of police authority, *i.e.,* the activation of their overhead lights, but *before* the troopers observed the license plate infraction. Accordingly, the police could not properly rely on this infraction to justify the stop.

### B. Prolonged Detention

Alternatively, Franklin argues that he was detained beyond the amount of time reasonably necessary to complete the purpose of his traffic stop—investigating the loud exhaust. "A seizure for a traffic violation justifies a police investigation of *that* violation." *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (emphasis added). "The tolerable duration of police inquiries in the traffic stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop," *id.,* (quoting *Illinois v. Caballes*, 543 U.S. 834, 837 (2005)), "and attend to related safety concerns," *id.,* at 1619-20. "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." *Id.* at 1614 (internal quotations and citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*

The Supreme Court, however, has identified constraints. Certain unrelated investigations, *e.g.,* questioning, that do not lengthen the roadside detention are permitted. *Id.* at 1614-15 (citing *Arizona v. Johnson*, 555 U.S. 323, 327-28 (2009)). Moreover, "[a]n officer's inquiries into matters unrelated to the justification for the

12

traffic stop, [the Supreme] Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not *measurably extend* the duration of the stop." *Johnson*, 555 U.S. at 333 (emphasis added).

Although the Court recognizes some validity in Franklin's argument due to the circumstances surrounding his stop, *i.e.,* the troopers investigating unrelated matters prior to investigating the violation that justified the stop, it is clearly established that an officer's inquiry into unrelated matters does not *per se* extend a detention beyond what is legally permitted. As such, the Court does not find that the trooper's questioning violated Franklin's Fourth Amendment rights. This finding, however, is presently of no consequence due to the Court having already found the traffic stop to not be justified by probable cause.

### C. Voluntariness of Consent

Lastly, Franklin argues that his consent to the trooper's search was not voluntary but mere acquiescence to police authority. *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (mere acquiescence to police authority is insufficient to establish voluntary consent)[10]. Generally, the Fourth Amendment requires

---

[10] *See, e.g.*, *Higgins v. United States*, 209 F.2d 819, 820 (D.C. Cir. 1954) ("[N]o sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered. It follows that when police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by denial of guilt, do not show consent".). *Contra United States v. Kelly*, 913 F.2d 261, 268 n. 3

13

officers to obtain a warrant prior to conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). Still, a police officer may request consent to search a person's vehicle during a traffic stop without violating the Constitution. *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (citing *United States v. Dunson*, 940 F.2d 989, 994 (6th Cir. 1991)). Although, the Government must prove by "clear and positive testimony" the voluntariness of Franklin's consent. *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2007). Whether a consent to a search was voluntary is a question of fact to be determined from the totality of the circumstances[11]. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227-29 (1973) ("In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents."). And the burden of proving that consent was voluntary is on the Government. *Id*. at 222.

The Court will briefly summarize the facts it considered. The circumstances of this case demonstrate that, at the time consent was given, Franklin was not free to leave. (*See* 11/28/18 Hr'g Tr. at 52-53, 68-69, 80.) The troopers pulled their patrol car in directly behind Franklin's vehicle, blocking him in the residential

---

(6th Cir. 1990) (listing cases where *Higgins* rule has been overwhelmingly rejected by other courts).

[11] Some factors include the age, education, and intelligence and/or competency of the accused, and the lack of any advice to the accused of his constitutional rights. *Schneckloth*, 412 U.S. at 226.

driveway. (*Id.* at 72, 119.) The Troopers approached Franklin's vehicle on both sides brandishing flashlights. (*Id.* at 120.) Also, Franklin was 25 years old at the time of the traffic stop, *id.*, at 22, with at most an 11th grade education, *id.*, at 149.

Although the Government asserts that Franklin's prior experience with the criminal justice system and his prior convictions should have put him on notice of his right to refuse consent, he had never been in a situation that might apprise him of his right to refuse consent to a search *of his vehicle*. (*Id.* at 125-26, 150.) And Franklin testified that he did not know he could refuse the search of his vehicle, he believed he had "no choice with the police," and he thought the Troopers could search it regardless. (*Id.* at 124-25, 151.) The Government fails to show how his prior experiences establish that Franklin knew of his right to refuse consent to a search *of his car*. Contacts with the criminal justice system do not, standing alone, demonstrate that a defendant is aware of the specific right to refuse consent to a search of his or her vehicle. Furthermore, Trooper Clark admitted that informing Franklin of this right would hamper his efforts to search the vehicle[12]. (*Id.* at 91.) Still, the troopers did not use physical force or any other means of coercion to obtain consent. (*Id.* at 147-48.)

---

[12] The Court notes that an officer is not required to inform an individual of the right to refuse consent to a search. *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) ("And just as it 'would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning,'" *Schneckloth*, 421 U.S. at 231, "so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary.")

Based on the totality of the circumstances, the Court finds that Franklin's consent was involuntary. The Court believes that Franklin did not provide his consent with the requisite awareness that refusing was a real option. Also, having been stopped without probable cause, the Court is persuaded that Franklin acquiesced to the, albeit noncoercive, displays of police authority. Case law contemplates that there must be some display of police authority that prompts acquiescence but falls short of the use of threats or physical force. *Bumper*, 391 U.S. at 548-49; *Schneckloth*, 412 U.S. at 227-29; *United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981), *overruled on other grounds by Steagald v. United States*, 451 U.S. 204 (1981), *as recognized in United States v. Hardin*, 539 F.3d 404, 412 (6th Cir.2008) ("a search based on consent requires more than the mere expression of approval to the search"); *United States v. Worley*, 193 F.3d 380, 385-87 (6th Cir. 1999). The Court is convinced these circumstances are an example of such.

Additionally, the Court has already found that Franklin's traffic stop was not supported by probable cause and that he was illegally detained at the time of his consent. Therefore, Franklin's consent was also tainted. *See Florida v. Royer*, 460 U.S. 491 (1983) (affirming reversal of conviction where consent was given during illegal detention thereby tainting consent). Consequently, the Court concludes that Franklin's consent was not given voluntarily.

For the foregoing reasons, the police troopers violated the Fourth Amendment by stopping Franklin without probable cause and conducting an unlawful search of his vehicle. As a result, all evidence and statements[13] obtained during the illegal traffic stop must be suppressed as fruit of the poisonous tree.

Accordingly,

**IT IS ORDERED**, that Franklin's Motion to Suppress (ECF No. 14) is **GRANTED.**

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 26, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 26, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager

---

[13] The Court need not address the Government's final argument for probable cause because it is based on statements that must be suppressed as a result of the illegal traffic stop and unlawful search.